No. 19,551.

JENNIE B. WITHERS, *Appellant*, v. CAROLINE A. BARNES
and HIRAM WILSON BARNES, *Appellees*.

SYLLABUS BY THE COURT.

1. DEED—*Father to Daughter—Valid Delivery*. The facts concerning the delivery of a deed considered and held sufficient to constitute a valid delivery.

2. DEED — *Statute — Joint Tenancies — Effect of Deed to Two Grantees or the Survivor of the Two*. Section 2966 of the General Statutes of 1909 abolishing joint tenancies and survivorship does not make it unlawful for a grantor to convey an estate to two grantees or the survivor of the two; and the survivor may lawfully take the entire fee under such a conveyance.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed June 12, 1915. Affirmed.

*William Dill, William W. Hooper,* both of Leavenworth, and *Elijah Robinson,* of Kansas City, Mo., for the appellant.

*A. E. Dempsey, Floyd E. Harper,* both of Leavenworth, and *Stewart Taylor,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment of the district court of Leavenworth county in an action brought by Jennie B. Withers against her sister Caroline A. Barnes and her brother Hiram Wilson Barnes to recover an interest in certain real estate, apparently the family domicile, conveyed to Caroline by her father, Delos N. Barnes. The brother disclaimed any interest in the property and alleged that it belonged to his sister Caroline by virtue of a valid deed executed and delivered to her during their father's lifetime.

The father had been a man of considerable property.

His will disposed of extensive land holdings and city lots in the counties of Leavenworth, Wyandotte and Sedgwick in this state and in Platte and Jackson counties in Missouri. The beneficiaries were his son Hiram and his three daughters, Mrs. Jennie B. Withers, Miss Caroline A. Barnes and Miss Jessie Barnes. To the casual reader of the will, no great departure from an equitable division of the property between his children is apparent. The division would appear sufficient to make them all well-to-do. The plaintiff married about 1882. The mother died in 1893, and Caroline remained single and kept house for her father until his death in 1912. The will was executed February 2, 1903. The deed to the disputed property was in terms of general warranty and in part recited:

"This indenture made this 1st day of April, 1904, between Delos N. Barnes, a widower of Leavenworth, in the county of Leavenworth and the state of Kansas, of the first part, and Jessie Barnes and Caroline A. Barnes, or the survivor, of the second part."

At that time the daughter Jessie was an invalid, and she died June 3, 1907. A few days after her death, the father handed some deeds to Caroline saying:

"Here are some deeds I want you to have. These deeds have to be delivered. You take these down to Mr. Dempsey and get a receipt for them. . . . I suppose now you will be marrying some good-for-nothing fellow and turn me out of doors."

Caroline followed her father's instructions and Mr. Dempsey kept the deed until after the death of Mr. Barnes in March, 1912, when it was recorded. During the period between the making of his will and his demise Mr. Barnes made some other deeds to Caroline and the others, but with their consent he at various times sold some of such properties to third parties. Obviously this must have been done before any such deeds to his children were recorded and perhaps before they were delivered.

The testimony of Mr. Dempsey, in whose custody the deed was placed by Caroline by the advice or direction of her father, is also pertinent on the question of delivery, and that question is the determining factor in this lawsuit.    Mr. Dempsey's testimony, abridged, reads:

"I am a practicing attorney in the city of Leavenworth since the fall of 1894, starting in to practice here; I occupied offices with Judge Gillpatrick; he went on the bench in 1900, but for some years after that he made the same office his headquarters; he and the deceased, Delos N. Barnes, were close friends, and the latter often called at the office to visit with the judge, and I got quite well acquainted with him; sometimes when Judge Gillpatrick was not present he would engage in conversation with me; the only matter that had a legal phase that he discussed with me was in connection with these deeds I have mentioned here; that was perhaps along in 1904, I can't fix the date exactly; on more than one occasion he mentioned the matter of drawing up deeds for his two girls, who were at home, and he said he had consulted with Judge Gillpatrick and Senator Baker whether it would be legal to make deeds and leave them in the hands of someone for these girls, or whether it might be better for him to deliver the deeds direct to them.    The first time that I knew that he had made any deeds was when Miss Carrie Barnes brought them to my office some time in 1907; she came with these deeds to my office and left them with me to keep for her, and I gave her a duplicate receipt for them, and kept a copy of the receipt myself. . . .    These deeds remained in my possession until they were recorded, at the direction of Caroline A. Barnes.

"I met Mr. Barnes several times after the deeds were left with me by Miss Caroline, but he never mentioned anything about them."

The jury made special findings of fact, and in accordance therewith the district court gave judgment for defendant Caroline A. Barnes.

The principal contentions of counsel for appellant are, (1) that the evidence proved no proper delivery of

the deed; and (2) that if the deed conveyed title to Caroline, it was only an undivided half interest.

We have recited the main facts upon which the ultimate fact of delivery depends. The deed was executed to Jessie and Caroline, or the survivor, in 1904. The father retained possession of the deed until after the death of Jessie in 1907. There was therefore no delivery as to Jessie. After Jessie died he gave the deed to Caroline under the circumstances narrated by her and it was deposited with Mr. Dempsey as testified by him. Did this constitute a delivery? The district court so found. Was there any reservation of control of that deed by the father? No such evidence is adduced. What are the inferences? That the father was not doing a useless or futile thing; that he intended the ordinary consequences of his acts; and these also are in keeping with his conversations with witnesses that he intended that Jessie and Caroline, who had stayed at home and kept house for him, should have the home place. They are also in harmony with his proved purpose that Caroline, who had the care of Jessie, the invalid, should have that property. These conversations were after the deed was executed in 1904 and before its delivery in 1907, and were competent under all the rules of evidence.

The judgment of the district court on this question can not be disturbed.

What merit is there to the contention of appellant that Caroline should only take a half interest in the property? The conveyance was to Jessie and Caroline, or the survivor. We have already noticed that Jessie had died before the delivery of the deed. The grant to Jessie failed also because a conveyance can not be made to a dead person. But it is urged that section 2966 of the General Statutes of 1909, which abolished survivorship in joint tenancies, nullifies the words "or the survivor" in this conveyance. We think not. Considering the circumstances, the intent of this convey-

ance is as plain as the noonday sun. The father intended that these two daughters, or the survivor of them, should have the family domicile. He was not concerned about the intricacies of a form of land holding which had been abolished in Kansas. If both daughters had lived until delivery of the deed, they would be technically tenants in common—merely the owners in fee simple. Since one of them died, the survivor of them took the entire fee in strict accord with the language of the grant. Section 2966 of the General Statutes of 1909 abolished joint tenancies and the doctrine of survivorship *by operation of law*. It would be far-fetched indeed to hold that the grantor of a fee could not *purposely* make a conveyance which would confer common ownership on two grantees or the entire fee on one of them upon the death of the other.

The judgment is affirmed.