NEILL v. ROYCE (ROYCE, Intervenor).

No. 6391.   Decided December 29, 1941.   (120 P. 2d 327.)

See 7 Am. Jur., 300; 33 C. J. Joint Tenancy, sec. 5.

*J. Grant Iverson,* of Salt Lake City, for appellant.

*W. D. Beatie* and *T. C. Hanson,* both of Salt Lake City, for respondents.

WOLFE, Justice.

From a decree in equity for the plaintiff in the sum of $1,341, Ida C. Royce, intervenor, appeals.

Intervenor is the second wife of O. W. Royce, defendant. Florence Royce Neill was the first wife of defendant. Intervener's appeal arises out of an action by plaintiff to se-

cure support money for her children which defendant had failed to pay according to a former divorce decree. At the time of filing her action, plaintiff had issued a restraining order against defendant restraining him from disposing of any of his assets. A copy of this order was served upon the Farmers and Merchants Bank of Provo, Utah, wherein defendant and intervener held a joint savings account.

Intervener, the second wife, filed a complaint in intervention alleging that the funds restrained at the bank in the joint savings account were her separate property; that she was apprehensive of their loss, and praying that she be declared owner thereof and for the release of the same.

At the first trial of the case, evidence as to the question of ownership of the joint savings account was excluded on the theory that it violated the parol evidence rule. The court granted a motion for new trial and admitted evidence as to the joint savings account.

At the second trial, Ida C. Royce, intervener, and O. W. Royce, defendant, testified in substance to the following facts:

Intervener stated that she had been previously married and upon the death of her first husband on June 26, 1936, was left a widow with two children. That she had realized out of insurance policies, soldiers bonus, and collection of accounts receivable approximately $2,500 net from her late husband's estate. She further testified that since August 5, 1936, down to August 2, 1940, she had from time to time loaned to the defendant in excess of $1,000 of the monies received principally from her deceased husband's estate. No accurate records were kept by either party as to these loans. It would appear that they were used by the defendant in speculative ventures in purchasing livestock.

They were married on October 14, 1937. The parties maintained a joint checking account at the Farmers and Merchants Bank of Provo. On August 2, 1940, defendant stated to his wife that on the following day he would withdraw $1,000 from their joint checking account and deposit

it in a savings account in her name. According to their testimony, Mrs. Royce insisted that it be made a joint savings account rather than an account in her name alone. The purpose being, according to the testimony, that in case of her death the money would be immediately available for the education of the children by her former marriage without the cost and trouble of probate.

The following day, August 3, 1940, both parties went to the bank. There they signed a joint tenancy agreement with the bank. Defendant on being questioned whether or not he read the agreement stated, "I don't think I did." On being further questioned by the court, defendant admitted he knew the nature of a joint account but maintained that he had not thought of the savings account in the same way as a checking account. Defendant testified that he had given the pass book to his wife saying, "There is your money. I will never touch a dime of it."

The lower court reached the same conclusion at the second trial as it had at the first trial. It found the defendant in arrears in support money, and that said joint account was not the sole and separate property of the intervener; further, that the defendant was the owner of the $500 deposited by him in court at the time of the second trial to purge him of contempt which $500 was obtained from the joint savings account in question.

Respondent urges upon this court the case of *Holt* v. *Bayles*, 85 Utah 364, 39 P. 2d 715, 718, as being controlling here. In that case this court stated that

"where there is a joint agreement executed by the parties which clearly declares the intention to create a joint interest of each in the deposit or credit, the courts will sustain such intention thus expressed, especially where the contract is not attacked for fraud, mistake, incapacity, or other infirmity."

Again later in the opinion, this court stated that

"Where such intention [joint tenancy] is clearly expressed in a written contract executed by the parties, which remained unaltered, and there is no fraud, undue influence, mistake, or other infirmity

alleged, *the question of intention ceases to be an issue and the courts are bound by the agreement."* (Italics added.)

In passing it is well to note for historical reasons that in the case of *Holt* v. *Bayles,* supra, the California cases so strongly relied upon by this court in that opinion arise under a statute in California making the joint tenancy agreement, in case of the decease of one of the codepositors, conclusive evidence as to their intention. However, prior to the enactment of this statute by the legislature, in the case of *Kennedy* v. *McMurray,* 169 Cal. 287, 146 P. 647, Ann. Cas. 1916D, 515, the California court had by judicial legislation already arrived at this conclusion. Perhaps it would have been better from a point of legal accuracy for this court in the Holt case to have based its decision on the Kennedy case rather than the cases subsequent to the statute.

In the instant case, however, we do not have a suit between a codepositor and the representatives of the deceased codepositor. We have a suit by a third party against the interest of one of the living codepositors. This court having made the written instrument conclusive evidence in the case of a deceased codepositor, *Holt* v. *Bayles,* supra, the question arises what presumption will the law purport into a joint tenancy agreement where both parties to the written instrument are still alive.

To understand more clearly the attitude of this court towards a joint savings account, it is advisable to glance quickly through the history of joint tenancy in law and equity.

The historical background of a joint tenancy has an interesting and fluctuating record. In the early English common law the general rule was that in the absence of an express provision severing the interests, a transfer of estates was deemed by law a joint tenancy rather than a tenancy in common. The law favored joint tenancy at this early time for the reason that a tenancy in common tended to split the feudal tenures, thus rendering it difficult to collect these feudal military services. *Fisher*

v. *Wigg*, 1 Salk. 391; *Ward* v. *Everet*, 1 Ld. Raym. 422; 2 Blk. Comm. 180, 193. As a result much nicety arose in the wording of grants so as to avoid the presumption of the law.

When the military tenures were abolished and converted into free and common socage by the statute 12 Chas. II, (1660) C. 24, Sec. 1, the reason for such presump- of joint tenancy ceased to exist. We find a court of equity as early as 1747, *Haws* v. *Haws*, 3 Atk. 524, expressing the view that joint tenancies were no longer favored because

"they introduce inconvenient estates, and do not so well provide for families, therefore this court leans against them, and so, I believe, do the courts of law now, though they favored them formerly. * * *" *York* v. *Stone*, 1 Salk. 158, 1 Eq. Cas. Abr. 293, Par. 1; *Stones* v. *Heurtly*, 1 Ves. 165.

A joint tenancy being considered "an odius thing in equity," *York* v. *Stone*, supra, it was not long before the courts of law expressed a similar view. Hence, in the absence of express words to the contrary, the presumption of the law reversed itself from presuming a joint tenancy to favoring and presuming a tenancy in common. Kent, Commentary on American Law, 14th Ed.; Bouvier's Institutes, Ch. XXIII, p. 92; *Withers* v. *Barnes*, 95 Kan. 798, 149 P. 691, Ann. Cas. 1917B, 57.

In the United States, the tendency has been away from the English joint tenancy, with its jus accrescendi, or right of survivorship, and in favor of tenancy in common. The legislatures of most states have supported what was already done by judicial construction, by enacting statutory provisions as to cotenancy.

Under the Revised Statutes of Utah, 1933, we find two provisions expressing this trend. 101-2-34, R. S. U. 1933, provides that

"'a devise or legacy given to more than one person vests in them as owners in common,"

and again under 78-1-5, R. S. U. 1933, we find that

"every interest in real estate granted to two or more persons in their own rights shall be a tenancy in common, unless expressly declared in the grant to be otherwise."

However, at all times where an expressed intention appeared on the face of the instrument indicating a joint tenancy, equity would allow the joint tenancy to prevail. In *Hayes* v. *Kingdome*, 1 Vern. 33, 23 Eng. Rep. (Reprint) 288, where it appeared that cotenants contracted among themselves for a survivorship of their interests, equity gave force to their agreement by holding that they held as joint tenants.

Hence, although the history of joint tenancy has been one of vacillation under the common law, and has been directly legislated against in the United States, equity has from ancient times upheld the presumption of a joint tenancy where there are words on the face of the instrument ■ so indicating. *Hayes* v. *Kingdome*, supra; *De Witte* v. *De Witte*, 11 Sim. 40; *Bustard* v. *Saunders*, 7 Bear. 92, 7 Jur. 986; *Heasmon* v. *Pearse*, L. R. 11 Eg. 522, L. R. 7 Ch. 275; *Barker* v. *Giles*, 9 Mod. 175; *Jones* v. *Hall*, 16 Sim. 500; *Cock* v. *Burrish*, 1 Vern. 425; *Garrick* v. *Taylor*, 29 Bear. 79, 7 Jur. N. S. 116, 30 L. J. Ch. 211, 3 L. T. N. S. 460, 9 W. R. 181, 54 Eng. Rep. (Reprint) 556.

Considering the instant case, the defendant and intervener signed a written agreement which on its face clearly states that the funds deposited in the joint savings account were to be held jointly. The agreement is as follows:

"Joint Tenancy Agreement

"We, the undersigned, hereby jointly agree and certify that we have this day deposited with Farmers and Merchants Bank of Provo, Utah, the sum of . . . . . . . . . . . dollars ($ . . . . . . . . . . . .) current funds, and said money is to be held by said bank upon the following terms and conditions: to wit: The undersigned own the same as joint tenants, with the right of survivorship, and with the right to either of the undersigned to draw out the whole or any part of said sum at any time or times during the life of both; and upon the death of

either of the undersigned, the survivor shall own absolutely and be entitled to the whole of the residue of said deposit, and said residue shall be payable to and be drawn by such survivor at the pleasure of such survivor. All moneys which either of the undersigned shall hereafter deposit on the account above mentioned, or add to the deposit above mentioned, and all dividends, accumulations, and increase of said original deposit, or of any subsequent deposit or additions thereto, shall be held, owned and drawn upon the same conditions and terms, that is, either of the undersigned may draw the same, or any part thereof, during the lifetime of both, and the whole shall vest absolutely in the survivor upon the death of either of the undersigned.

"Witness our hands this............day of Nov. 12, 1937, 19.....

"O. W. Royce     (Seal)
"Ida C. Royce    (Seal)"

*Holt* v. *Bayles,* supra, and the conclusive principle therein laid down that "intention ceases to be an issue and the courts are bound by the agreement" is not controlling under the circumstances of the instant case; nevertheless, there remains a presumption of joint tenancy where both cotenants are alive.

Cardozo, C. J., in his concurring opinion in *Moskowitz* v. *Marrow,* 251 N. Y. 380, 167 N. E. 506, 512, 66 A. L. R. 870, points out that

"the plain implication is that as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more, but that after the death of either leaving a deposit then subsisting, the presumption becomes conclusive as to the title of the survivor."

This view is consistent with our opinion expressed in *Holt* v. *Bayles,* supra, and in this case.

This presumption, injected by courts of equity since ancient time, continues and can be overcome by the intervener only by clear and convincing proof to the contrary.

Appellant maintains that the trial court erred in that its findings and conclusions are not supported by the evidence. She maintains they are contrary to the weight of the evidence.

The *only* evidence refuting the implied joint savings account in the instant case was that of the testimony of the codepositors to the effect that their purpose in establishing the joint savings account was to take advantage of the survivorship provision, and that the money was intended to be the sole and separate property of the intervener. Such proof under the circumstances of this case cannot be termed so clear and convincing as to require the trial court to find in favor of appellant. To say that it was sufficient would throw open the door to fraud and collusion as between codepositors and third parties. This equity will not do.

There being no reversible error, the judgment is affirmed with costs to the respondent.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.