367 P.2d 179

O. A. TANGREN, etc., Plaintiff and
Appellant,

v.

Adeline M. INGALLS, Defendant and
Respondent.

No. 9297.

Supreme Court of Utah.

Nov. 30, 1961.

John E. Stone, O. A. Tangren, Peter L. Flangas, Salt Lake City, for appellant.

Romney, Boyer & Ronnow, Salt Lake City, for respondent.

CROCKETT, Justice.

The subject of controversy in these actions is two savings accounts, one of $10,-000 in Prudential Federal Savings & Loan Association, and the other of $10,247.09 in American Savings & Loan Association. They are claimed by the appellant, O. A. Tangren, executor of the estate of Ben Stewart who originally owned said accounts, and by respondent, Adeline M. Ingalls, whose name was placed on the accounts as joint tenant about 10 months prior to Mr. Stewart's death. From orders of the district court ruling summarily before trial that the respondent Ingalls was entitled to the funds, the executor appeals.

The two savings accounts had originally belonged to, and had been maintained by, the deceased, Ben Stewart. On April 2, 1959, new account cards were made out in the joint names of Ben Stewart and Adeline M. Ingalls. The cards contained the recital that either party could withdraw the funds and that they were joint tenants with right of survivorship. Ten months later, February 3, 1960, an action was filed against Adeline M. Ingalls on behalf of Ben Stew-art seeking an adjudication that the accounts were his sole property, and that she had no interest therein. Both banks were notified not to pay out the funds. On February 7, 1960, four days after that action was filed, Ben Stewart died. Appellant executor was later substituted as plaintiff.

On March 16, 1960, Adeline Ingalls commenced separate actions against both banks to recover the funds in said accounts and joined the executor as the defendant in each action. The banks paid the money into court for disposition pursuant to Rule 67, U.R.C.P. The executor filed denials and counterclaimed, asserting ownership of the estate to the money. Respondent Ingalls filed a motion to dismiss the executor's action against her, and motions for summary judgment in her two actions against the banks and the executor. The motions in all three cases were combined for hearing, and the court granted the respondent's motions, sustaining her claim to the funds in the bank accounts.

Joint tenancies in bank accounts with right of survivorship have long been recognized as the authorities referred to below attest. However, in spite of recitals on the account cards, for reasons peculiar to such accounts, courts have been somewhat liberal in permitting proof as to what the true ownership of the funds is.[1] It is well

---

1. See discussion in Neill v. Royce, 101 Utah 181, 120 P.2d 327; see also 66 A.L.R. 881; 103 A.L.R. 1123; 135 A.L.R. 993; 149 A.L.R. 879.

known that such accounts are often used for some special purpose of the parties in which their real intention is to obtain the convenience such an account affords, rather than to create a true joint tenancy ownership and right of survivorship in the funds. Another factor having an important bearing on the rights of the parties inter se is that the deposit card is basically an agreement with the bank. It is prepared by the bank, is signed by the parties at its request, and for the bank's protection. Therefore, its recitals need not necessarily be regarded primarily as an agreement between the parties, nor as reflecting the true relationship between them.

It is of passing interest to note that in earlier times in cases dealing with such accounts, this court indicated a view that a survivor claiming the fund after the death of the original owner had the burden of showing that the latter intended to make a gift of the fund.[2] But that view is long since outmoded as will hereafter appear.

The subject of the ownership of money held in a joint bank account was considered by this court in the case of Neill v. Royce.[3] Plaintiff, a divorced wife, in pursuing un-

paid support money, had procured a restraining order against the account held in the name of the defendant Royce and his second wife. The latter intervened, claiming the entire fund. On a first trial the court rejected proof proffered as to the intent of the parties in establishing the account as violative of the parol evidence rule. But it granted a new trial and admitted such evidence; then found the defendant husband to be the owner of one-half the fund and the plaintiff prevailed to that extent. Upon appeal this court sustained. In discussing the status of such accounts, the court expressed the view that an agreement on the account card is presumptively valid and should be given effect unless the presumption is overcome. It quoted with approval this statement by Cardozo, C. J., in his concurring opinion in Moskowitz v. Marrow:

> "The plain implication is that as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more, * *."[4]

And with respect thereto our court said:

> "This presumption, injected by courts of equity since ancient time, continues

2. See statement to that effect and cases cited in support thereof in the concurring opinion of Justice Wade in Greener v. Greener, 116 Utah 571, 212 P.2d 194.
3. 101 Utah 181, 120 P.2d 327, 331.
4. 251 N.Y. 380, 167 N.E. 506, 66 A.L.R. 870. The material following the quote is based on a New York statute making the presumption conclusive after death and therefore has no application to our case. California has a similar statute. But compare the Michigan statute which provides that a rebuttable presumption arises in favor of survivor. See Annotation in 66 A.L.R. 881 for discussion of these statutes.

and can be overcome by the intervener only by clear and convincing proof to the contrary."

We regard this rule as sound. However, it must be conceded that there has existed some uncertainty in our law with respect to the situation where one of the co-depositors in such an account has died before the controversy arose. This appears to be due in part at least to language employed in the Neill case just referred to in distinguishing it from the earlier case of Holt v. Bayles,[5] which it cited and stated, "This court * * made the written instrument conclusive evidence in the case of a deceased co-depositor." But the court then pointed out that such rule had no application to the Neill case because the latter was a controversy between living persons, and ruled that as between them there is no such conclusive presumption. Nevertheless, the case of Holt v. Bayles, and this characterization of it, have been relied upon as supporting the proposition that where a joint tenancy bank account has been voluntarily created and one party dies, there is a conclusive presumption that there was a true joint ownership in the fund, and that the survivor is entitled to it. It is not to be disputed that there is language in the Holt case which might justify this idea, nor that it has been similarly characterized in later cases referred to below in this opinion. Nevertheless,

we think it is a fair observation that an analysis of the whole case will reveal that the court was in fact concerned to some degree with the actual intent of the parties in creating the account and the equities existing between the litigants; and that appears to be true of all other cases from this court dealing with such joint bank accounts which have come to the writer's attention.

That this was so in the Holt case is manifest by the fact that Justice Folland, speaking for the court, directed attention to these facts: that although the $12,000 check which started the account was payable to and owned by Anna Bayles, it was also endorsed by her sister, Emma. He observed, "From this fact alone, it may be urged, *with good reason* that Anna made a gift of the check to Emma. At least there is *indicated intent* on the part of Anna to transfer some interest in the fund to Emma." (Emphasis added.) Insofar as its application to the instant case is concerned, it is also important to note that the opinion was dealing with a situation where all of the plaintiff's evidence had been presented, and the trial court had ruled in favor of the defendant donee, the sister, Emma Bayles.

The year following the decision in Neill v. Royce the court again confronted a case closely analogous to Holt v. Bayles. In Wood v. Kinter,[6] plaintiff's decedent, Louisa Wood, had received a check from

5. 85 Utah 364, 39 P.2d 715.

6. 86 Utah 279, 43 P.2d 192, 193.

her father's estate, had kept it for a month or two and then delivered it to the defendant, Mrs. Kinter, for deposit in the bank in a joint account. The court stated that the question was: "Does the agreement in question constitute a joint tenancy with the right of survivorship in Mrs. Kinter? This question has been settled by this court by the cases of Holt et al. v. Bayles, 39 P.(2d) 715, and Columbia Trust Co. v. Anglum, 63 Utah 353, 225 P. 1089." But in spite of thus paying lip service to the rule Holt v. Bayles is cited for, the court's opinion again clearly showed that it was concerned with the intention of the parties as shown by the evidence. It called attention to these facts:

"The evidence is further convincing that Mrs. Wood desired that Mrs. Kinter have this money upon her death. Mrs. Kinter had been helpful to her for a number of years, had been a close friend and neighbor, had assisted her, and Mrs. Wood had formed rather a deep attachment for her, and, because of the many acts of kindness of Mrs. Kinter * * * *Mrs. Wood preferred to give this money to her* rather than to leave it to any other person, *and so expressed herself.*" (Emphasis added.)

The question of the ownership status of joint savings accounts again came up in the divorce case of Greener v. Greener.[7] The parties had married late in life after having reared their families. After stress developed, the husband had withdrawn about $20,000 which he had originally owned, but which had been held by the parties in joint savings accounts, and transferred the funds to his son. This court unequivocally approved and applied the rule that there is a presumption of joint ownership arising from the agreement which can be overcome by clear and convincing evidence; and held that under such rule the evidence justified the trial court's finding that the husband had not intended to endow his wife with an interest in the funds. The court again gave a nod in passing to Holt v. Bayles and the idea that the presumption becomes conclusive after death, but proceeded to observe:

"However, since both of the parties in the instant case are still alive, we need not concern ourselves with the reasoning employed to support the conclusive presumption of intent where one of the parties has died before the assertion of conflicting rights." [116 Utah 571, 212 P.2d 199.]

It is significant that the court took occasion to voice its doubts as to the soundness of that doctrine by stating:

"The reason for the conclusive presumption, in the absence of statute, may not be clear for seemingly *death would have no effect on the intent*

7. Footnote 2, supra.

*with which the joint deposit was created."* (Emphasis added.)

It has been suggested that there is better reason for the presumption to be conclusive after death because the lips of one of the co-depositors are stilled and not to award the fund to the survivor will thwart his effort to that purpose. The fallacy in this is that it presupposes that the deceased has acted with the intent of endowing the other with the ownership and the right of survivorship in the fund. As stated above, this may not always be the case. The fact cannot be ignored that in many instances such accounts are set up with no such intent or purpose, but for other conveniences of the parties, and they sign the bank's printed form cards without realizing or intending what their full and literal import might be. In such instances to consider the presumption conclusive simply because one of the parties dies, would defeat, rather than carry out, the intent of the creator of the account and thus work injustice. On the other hand, whatever the real purpose may have been, it can be more effectively carried out under the rebuttable presumption rule.

If the intent was in fact to create a joint tenancy ownership with right of survivorship, in all likelihood that would be accomplished for these reasons: First, if that is the true situation, it would be rare that anyone would contest it. Second, even if they did, there is a substantial defensive shield in the presumption of the validity of the agreement which can be overcome only by clear and convincing evidence; and third, the "dead man's statute" also has certain protective effects against any self-seeking persons who might want to testify to facts which would be equally within their knowledge and that of the deceased.[8]

It is true that in the recent case of First Security Bank of Utah, N. A. v. Demiris,[9] we again referred to Holt v. Bayles without disagreeing with the rule of conclusive presumption after death for which it has been cited. However, the context in which the statement was made indicates that it was motivated to some extent by concern for protection of the depository:

"* * * We are not here disagreeing with the ruling in the case of Holt v. Bayles, but it is significantly different from this case. * * * [A]fter the death of one of the parties * * * [t]he presumption was applied that such money passed to the surviving joint tenant, which seems sound in view of the necessity of some certainty in dealing with such accounts. *It is to be recognized that the bank or other depository is normally protected in permitting withdrawal by either signator. But as between*

---

8. Sec. 78–24–2, U.C.A.1953.

9. 10 Utah 2d 405, 354 P.2d 97, 99.

*the parties themselves, the situation may be different."* (Emphasis added.)

An overall purview of the Demiris case will show that instead of supporting the thesis that there is a conclusive presumption of ownership in the surviving joint tenant, its true import is that the question of the intent of the parties is controlling, as shown by the following language:

"The evidence points unerringly to the fact that insofar as the purpose, desire, and intent of the decedent was concerned, the transfer * * * was for his convenience in the face of the exigency that he had to go to the hospital * * * there is no circumstance in this case which suggests any intent on his part to make a gift or a transfer of ownership of this fund to his wife."

We further called attention to the fact that the wife's own testimony of the stormy marital history, coupled with her grasping of the fund practically as soon as she could get her hands on it, "argue persuasively that he had no intent to endow her with the money, and that she fully realized that fact."

■ We have discussed the foregoing cases to show that in most instances, where controversy has existed over the ownership of a bank account in joint tenancy, the court has considered the intent with which the account was created to be the basic and controlling fact.[10] However, there is no necessity for us to quarrel with the interpretation that may be based on prior cases. Notwithstanding what may have been said therein, we are of the opinion that the rule which is sound in principle and practical in application is that applied in the cases of Neill v. Royce and Greener v. Greener, supra: that where there is a written agreement of joint tenancy with right of survivorship, there is a presumption of validity and it will be given effect unless it is successfully attacked for fraud, mistake, incapacity, or other infirmity, or unless it is shown by clear and convincing evidence that the parties intended otherwise; and further, that such rule is applicable whether the parties are living or where death has intervened. Nor would the fact that the original owner may have changed his mind after the creation of the account alter the applicability of that rule.

The critical question in the instant case is whether the appellant could meet the requirement of presenting clear and convincing evidence to attack the recitals on the deposit cards.

10. That this court has also regarded the intent of the parties as the controlling fact in determining ownership of funds in joint bank accounts, although not involving joint tenancy, see Helper State Bank v. Crus, 95 Utah 320, 81 P.2d 359; and First Security Bank of Utah v. Burgi, 122 Utah 445, 251 P.2d 297.

The essential representations upon which he relies for that purpose are: that the money in the accounts all belonged originally to the decedent, Ben Stewart; that Mrs. Ingalls never made any contribution thereto; that he was not indebted to her; that after placing her name on the accounts he gave her $4,000 in cash, which was the full amount he intended her to have from his estate; and that he "did not know or realize that by creating these accounts he was placing his savings at the disposal of said Adeline M. Ingalls, or that he was placing her in a position where she would inherit all of said account upon his death or [so] * * * that he could not dispose of said accounts by will or other disposition."

The foregoing allegations appear to be sufficient to provide a foundation to receive evidence as to what the intent of the parties was and their relationship to the fund at the time of the creation of the account. Inasmuch as the trial court granted the judgments on summary motions, there is no way of knowing whether appellant could bring forth evidence which might be regarded as clear and convincing in favor of his position. Neither that court nor this can surmise what degree of proof he might adduce.[11]

The sustaining of summary motions without affording the party an opportunity to present his evidence is a stringent measure which courts should be reluctant to grant. It should be borne in mind that although disposing of a case on such a motion may seem an easy and expeditious method of dealing with litigation, it may not in fact be so. Unless the court feels a high degree of assurance that such ruling is correct it may result in defeating that purpose and actually protracting the litigation by requiring an appeal and then having a trial which should have been had in the first place. Accordingly, the privilege of presenting evidence should be denied only when, taking the view most favorable to the party's claims, he could not in any event establish a right to redress under the law; and unless it clearly so appears, doubts should be resolved in favor of permitting him to go to trial.[12] We have concluded that this should have been done in the instant case, and it is remanded for that purpose. Costs to appellant.

WADE, C. J., and McDONOUGH, J., concur.

HENRIOD, Justice (dissenting).

In dissenting, I suggest that this case adds to the present obfuscation anent joint

---

11. That trial court has wide latitude of discretion in that regard see Child v. Child, 8 Utah 2d 261, 332 P.2d 981.

12. See Samms v. Eccles, 11 Utah 2d 289, 358 P.2d 344.

bank accounts, in a situation where a clearly worded written agreement between depositors specifically and clearly states that the survivor shall own the fund, interdicting the bank to carry out its plain terms.

This case is identical with Holt v. Bayles.[1] There, we clearly said that: "Where there is a joint agreement executed by the parties which clearly declares the intention to create a joint interest of each in the deposit or credit, the court will sustain such intention thus expressed, especially where the contract is not attacked for fraud, mistake, incapacity, or other infirmity."

To date that case has been the law. It has bottomed the attorney's advice to clients for 27 years, that probate proceedings and costs might be saved by placing assets in a joint tenancy. Without being cognizant of the exact history of joint bank accounts, I think that the standard agreement with respect to such accounts, carefully has been designed and fashioned from a cloth woven by the principles of the Holt case. That case has been followed, without exception, in all Utah cases succeeding it, including Neill v. Royce,[2] Greener v. Greener,[3] and even First Security Bank of Utah, N. A. v. Demiris,[4] sired by the same author who pens this decision. Even though such subsequent cases represented a factually different situation, being inter vivos transac-

tions not involving survivorship, nonetheless, and without question or exception, they affirmed and endorsed Holt v. Bayles. Ironically, the main opinion cites all of those cases in a rather peripatetic effort to justify its position, including a sloughing-off of the doctrine of stare decisis, without explanation. All this with an irrelevant emphasis on the word "intention."

Holt v. Bayles simply said that if the deceased's intention was claimed to have been other than that expressed in the deposit agreement, such "intention" must be proven by him who attacks the *survivor's* claim, on some *equitable* ground pointing to fraud, mistake or the like, and that such *equitable* ground shall be directed against the survivor's dereliction in equity, by *clear and convincing evidence*. This is sound and sensible and but reiterates the hornbook amen to the rule that *any* contract may be vitiated in equity on the same grounds.

That is not this case. The complaint, partly quoted in the main opinion, simply alleges that the deceased "did not know or realize that by creating these accounts he was placing his savings at the disposal of 'defendant' or that he was placing her in a position where she would inherit all of said accounts upon his death." Nowhere is there any allegation that the *defendant* practiced any fraud or deception on the deceased or that she was a party to any other equitable

---

1. 85 Utah 364 (1934), 39 P.2d 715.
2. 101 Utah 181, 120 P.2d 327 (1941).

3. 116 Utah 571 (1949), 212 P.2d 194.
4. 10 Utah 2d 405 (1960), 354 P.2d 97.

indiscretion,—an essential ingredient in the application of the Holt v. Bayles decision, and those following it until now.

To urge that the deceased did not realize what he was doing would be to conclude he was illiterate,—which is not contended for in the complaint,—or that he misunderstood the English language,—which is not provoked in the complaint,—since the deposit contract, in crystal clearness informed everyone that the survivor was the owner in toto of the fund, and that the bank was to carry out its terms.

To consider this agreement differently than we would a promissory note, a bond or a deed, where a transfer apparently is contemplated, where none of the equitable means of destroying such instrument is alleged, simply mocks the parol evidence rule, the decision in Holt v. Bayles, and the universally recognized principles of equity required for its destruction.

I offer a gratuity to that of the main opinion which, without authority, says the bank prepares the form [5] and that consequently "its recitals need not necessarily be regarded primarily as an agreement between the parties." The answer to this ipse dixit is found in a question: Why not? The bank, like Mahomet, did not go to these people. They went to the bank, asked for the very integrated agreement they received, read it, voluntarily and deliberately

signed it. If what the main opinion suggests has any merit, it lies in the idea that it is foolhardy to sign anything, and that such foolhardiness paternalistically will find comfort in the courts. Why not do it the easy way? Why not simply deposit the money in a joint account, skip the parol evidence rule, forget about principles of equity, bury Holt v. Bayles, and let the courts make a post-mortem contract for the parties, one of whose lips are stilled? Substitute for his solemn written pledge, the words of a stranger to the inter vivos agreement,—rankest kind of hearsay, purported to have been spoken by the deceased, all in the absence of him who was particeps in the contract's creation, and against which hearsay a surviving depositor almost is helpless to challenge.

Perhaps a more serious departure indulged by the main opinion, is that under the facts of this case, it wipes out Holt v. Bayles, the cases succeeding it, including First Security Bank of Utah, N. A. v. Demiris, and a solid principle of equity. Heretofore in survivorship cases a conclusive presumption prevailed, destructible only by clear and convincing evidence of a true equitable ground for relief, such as fraud, directed against the survivor, not in favor of the deceased's intention. The succeeding cases, having to do with inter vivos combatants, required no such quality of proof, although a presumption of validity

5. I think Holt v. Bayles prepared the form not only for the bank but for its depositors.

was provided as one of the shields in the armory of whichever joint depositor was attacked. Even the Demiris case recognized this.

NOW: In the instant case the *agreement* is ignored and no longer is it necessary to circumvent its terms on equitable grounds by clear and convincing evidence. It simply requires that we look, not to the *contract* in the light of facts that equity may consider necessary for relief, but only to the *intention* of *one* of the parties, now deceased, without any allegation or proof of tortious conduct whatever on the part of the survivor. All that is necessary under *this* decision is clear and convincing evidence of the *intention* of one party to a contract, now deceased, without any showing of any dereliction of his co-contractor offensive to equity. Heretofore the true test has been to determine by clear and convincing evidence whether the *survivor* has been guilty of equitable conduct inimical to the sustenance of the contract, establishable only by clear and convincing evidence. This case has upsidedowned the law on joint accounts. Most certainly it will require banks and depositors to change their ways,—to what extent it is difficult to anticipate. This case will bring more than one client into the advocate's office to inquire: Why did you tell me that our joint account would eliminate the necessity of making a will, and would save me the costs of probate, absent proof by clear and convincing evidence that I was a malefactor in the creation of the account? Why didn't you tell me that without any inequitable conduct on my part, my wife's intention, unexpressed in our contract, was the only thing that my in-laws would have to urge to deprive me of the specific agreement we entered into with studied judgment, when you know I can't prove that my wife didn't say anything to them that pointed up else but that our own personal and confidential deliberations and contract would be irrevocable? Finally: What about the advice you gave me that there was a case called Holt v. Bayles that would protect our interests?

The dictum of the main opinion to the effect that "where there is a written agreement of joint tenancy with right of survivorship, there is a presumption of validity unless * * * it is shown by clear and convincing evidence that the *parties* intended otherwise," is not borne out by the cases cited. Irrespective of such misapplication of those cases, the dictum lacks the adjunct of requiring equitable grounds that are necessary to destroy the contract.

That dictum does not fit this case. Here we have an allegation that *one* of the parties intended something other than was expressed in writing. There is nothing in this case that even mentions the *intentions* of the *parties*. There is no hint as to the intention, good or bad, known or unknown, of the *other* party to the agreement.

I am confident this case will not be cited as an authority for the irrelevant dictum quoted above, but will be urged as an authority that if one party to such a contract had an intention irrespective of and different than that expressed in the contract, and from that of the other's,—the case here,—the integrated contract may be emasculated by proof of the former's without resort to allegation or proof of the latter's. It will be cited also as an authority sanctioning an unqualified exception to the parol evidence rule in this type of case, if *one*, but *not the other* of joint contractors, does not intend the consequences of his adopted, signed agreement.

I hope it has been a correct understanding on the part of this writer that once two people sit down, read their contemplated written contract and ink it,—*that is it*, absent facts that might vitiate it because of the inequitable conduct of one of the signatories, and that whether one or the other or both had differing intentions secreted in the recesses of the mind, their chameleonic undisclosed intentions, under the law and in equity, would not change the color or the fabric of their deliberate and heretofore irrevocable acts.

This case nurtures the obfuscation mentioned, and the trial court should be sustained, with (emphasis added).

CALLISTER, J., concurs in the views expressed in the opinion of HENRIOD, J.