518 P.2d 691

Leland S. McCULLOUGH, Executor of the Estate of Anna Sofia Olofson, Plaintiff and Respondent,

v.

Joyce WASSERBACK, Defendant and Appellant.

No. 13231.

Supreme Court of Utah.
Jan. 22, 1974.

Robert Rees Dansie, of Dansie, Ellett & Hammill, Murray, for defendant and appellant.

Leland S. McCullough, Jr., of McCullough & McCullough, Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Plaintiff as executor for Anna Sofia Olofson sues the latter's sister (half sister) Joyce Wasserback for the proceeds of a joint savings account and a certificate of deposit. The district court adopted the view that the joint ownership status had been used as a convenience only; and that the defendant owned no interest in the funds. Defendant appeals.

Anna Olofson was 81 years old when she died on November 26, 1971. It is apparent that there had been a sisterly relationship between Anna and defendant Joyce. On July 14, 1967, four years prior to her death, the $9,000 certificate of deposit had been purchased in the joint names of Anna Olofson and Joyce Wasserback, payable to either. A year later, on July 15, 1968, a joint savings account in the amount of $7,116.59 was opened in Walker Bank with the usual provisions as to joint-tenancy ownership with rights of withdrawal by either, and of survivorship. On November 15, 1971, Anna was ill and taken to the hospital. Before going she had turned over possession of the passbook and the certificate of deposit to Joyce. With Anna's knowledge and approval Joyce withdrew the savings account and placed it in a checking account in her own name; and proceeded to write checks thereon to pay Anna's bills and take care of her needs. By the terms of Anna's will she left her property, including an apartment house, to her son, Roy Erick Olofson, or in the event of his prior death, which has occurred, to his four children (her grandchildren); and as residuary legatees they would take the funds in controversy here, if they are part of the estate.

There seem to be ever recurring controversies over the rights of survivors in jointly held bank accounts.[1] It undoubtedly would be too naive to expect to discover a formula which would put at rest all such controversies, present and future. Nevertheless, this does not discourage courts from trying to devise rules for the application of principles of equity and justice in such disputes with such definiteness as can be achieved. The principal difficulty in writing any simple and definitive rule which will fit all cases is that the complexities of human life and personalities are such that no two fact situations are exactly alike. But they usually can be found as

---

1. E. g., Holt v. Bayles, 85 Utah 364, 39 P. 2d 715; Tangren v. Ingalls, 12 Utah 2d 388, 367 P.2d 179; Hobbs v. Fenton, 25 Utah 2d 206, 479 P.2d 472; Beehive State Bank v. Rosequist, 26 Utah 2d 62, 484 P.2d 1188; Hardy v. Hendrickson, 27 Utah 2d 251, 495 P. 2d 28.

tending to fall into one of two general but contrasting patterns.

An elderly person, call him A, is increasinly in need of attention and care. Someone, call him X, (usually a family member) is sensitive of his needs and assumes some responsibility of filling them. As part of the total circumstances, and perhaps for a syndrome of reasons, including gratitude, love and convenience, A creates a joint bank account with the actual desire and intent of endowing X with co-ownership and right of survivorship in the funds. After the demise of A, and the problem of care and attention no longer exists, others come forward to make their claims. In situations tending to fit into this general pattern it is obvious that a trial court's sense of fairness and human decency does and should impel him to tend to favor the caring person X, and to reject attacks upon his surviving ownership in the joint account.

It must be realized that there are other contrasting situations where one's sense of justice is affected differently. Elderly person B is also in need of attention and care. Yet there may be no genuinely caring person to whom B actually desires to give joint ownership of his bank account. In any event, for his own reasons, and perhaps for a combination of them, his true desire is to retain ownership himself. But solely because of necessity and/or convenience in handling his money and affairs, and with that definite understanding, he creates a joint account with someone else (usually a family member) Y; and it also quite often appears in such a situation that there is some indication of avarice of varying hues in the survivor Y.[2] In cases which tend to fit into this latter pattern it is but natural and proper that the same sense of justice and human decency both does and should impel the court to be more inclined to grant equitable relief from enforcement of the contract.

Notwithstanding what has been said above, there are some basic propositions that apply in disputes as to the ownership of such joint account funds. The joint deposit card which the parties have signed is a contract between themselves, and also with the bank. It has the same status and is entitled to the same binding effect as any other contract, nothing more and nothing less. As the contract states, the bank is exonerated if it pays out funds on the signature of either; and between the joint account holders, the contract is binding and effective in creating an ownership in joint tenancy, with right of survivorship; and in the event of the death of one, the survivor becomes the sole owner of the funds. However, inasmuch as such

2. Cf. e. g., First Security Bank v. Demiris, 10 Utah 2d 405, 354 P.2d 97, and Hardy v. Hendrickson, see note 1 above.

a contract is no more and no less sacro-. sanct than any other, it is subject to attack by showing that because of fraud, duress, undue influence, mistake, incapacity, or other infirmity that in equity and in good conscience it should not be enforced.[3] But as in the case with any written document which has been duly executed, it is entitled to the presumptions of validity, and its effect can be overcome only by clear and convincing evidence.[4]

In considering whether that standard of proof has been met we keep in mind that this is a case in equity in which this court may review the facts,[5] yet do not lose sight of the prerogatives indulged the trial court; that even in equity cases his findings and judgment will not be disturbed unless the evidence clearly preponderates against them and a manifest injustice or inequity is wrought.[6] But if these are seen to exist, this court may make its own findings and judgment to supersede those of the trial court.[7]

In support of the argument that the funds are part of Anna's estate the plaintiff stresses these facts: That the money originally all belonged to Anna; that the passbook and certificate of deposit remained in Anna's possession until just before she went to the hospital; that Joyce never asserted ownership of the funds until after Anna's death; and that she acknowledged that it was her intent to use the funds to provide for Anna's needs. It is not to be questioned that if there appears to be some basis for an equitable attack upon the contract, as discussed above, these are circumstances which may be considered in determining the true status of the funds. But we do not see any one of them, nor all of them together, as necessarily inconsistent with Anna's intention and desire, as shown by the written documents, that Joyce be endowed with joint ownership with right of survivorship. This seems especially true of the certificate.

We can see no possible justification for saying that it was "solely for convenience" in handling Anna's money to put it jointly in Joyce's name four years prior to going to the hospital, or to turn possession over

---

3. Ibid.

4. See Neill v. Royce, 101 Utah 181, 120 P.2d 327, 331; Greener v. Greener, 116 Utah 571, 212 P.2d 194; that where the contents of a document does not represent the true intent of the parties it may be reformed, see our recent case of Intermountain Farmers Assn. v. Peart, Utah, 515 P.2d 614 (Oct. 31, 1973). As to correction of deeds showing true intent see Corey v. Roberts, 82 Utah 445, 25 P.2d 940; Thornley Land & Livestock Co. v. Gailey et al., 105 Utah 519, 143 P.2d 283.

5. Utah Const., Art. VIII, Sec. 9, provides that " . . . in equity cases the appeal may be on questions of both law and fact . . . "; see Nokes v. Cont. Min. & Mil. Co., 6 Utah 2d 177, 308 P.2d 954.

6. See Allen v. Allen, 109 Utah 99, 165 P.2d 872; Wiese v. Wiese, 24 Utah 2d 236, 469 P.2d 504; MacDonald v. MacDonald, 120 Utah 573, 236 P.2d 1066.

7. See statement of the court through Justice Ellett v. Wiese v. Wiese, footnote 6 above.

to Joyce. The bank account of over $7,000 was more than enough to meet any then anticipated needs. Thus any idea that the delivery of the certificate was "for convenience only" was clearly mistaken.[8] With only minor and uncontrolling differences, the same reasoning applies to the passbook joint account which had existed for three years prior to the time Anna became ill and went to the hospital.

■ If there is merit to plaintiff's argument that Anna's keeping possession of the passbook and certificate shows an intention to retain ownership, there is also merit to defendant's argument that turning them over to her before she went to the hospital indicates recognition of the joint ownership and right of survivorship. Neither the fact that the money originally belonged to Anna, nor that this arrangement was a desirable and convenient thing for her, nor that Joyce reciprocated her sisterly devotion and expressed her intention to use the money to take care of Anna's needs, should be regarded as providing a basis for depriving her of her joint ownership in the money with which her sister had endowed her.

Related to the observation just made and having a significant bearing on the conclusion we have reached, is our impression of Joyce Wasserback; as to her concern for her sister, and in the apparent honesty of her conduct and in her testimony, an example of which is:

> Plaintiff's Counsel: Now, Mrs. Wasserback, also at the time, or subsequent to Mrs. Olofson's death you delivered to me also some other funds, did you not?
>
> A. Yes, sir.
>
> Q. And I think at that time you delivered to me $51.00 in cash which consisted of 8 silver half dollars, 72 silver dimes, 20 silver dollars, 90 cents in nickels and dimes and five-cent pieces, and 3 quarters. Does that sound about right?
>
> A. Yes, sir.
>
> Q. And how did you come into possession of those items?
>
> A. Well, in cleaning her apartment.
>
> Q. And you found those and you delivered those to me?

But it is also true that Joyce claimed that her sister Anna had given her joint ownership of the funds in controversy here, and refused to turn them over to the executor.

The problem as to whether the effect of the joint accounts should be overcome must be determined upon a consideration of the whole evidence. In so viewing it we do not see anything that is necessarily inconsistent with Anna's intention as shown by the documents: to invest her sister Joyce

---

8. Comparison will show that this contrasts with the case of Hardy v. Hendrickson, footnote 1 above, where this court sustained findings that a joint account was for convenience only; and that this case is more closely analogous as to facts, and the applicable principles of law, as set forth in Hobbs v. Fenton, footnote 1 above.

with the co-ownership and right of survivorship in these funds; and we see very little substance to anything in the evidence that points to the contrary. Accordingly, it is our conclusion that there is no clear and convincing evidence to overcome the effect of these joint accounts.

Reversed and remanded for entry of judgment for defendant. Costs to defendant (appellant).

TUCKETT, J., concurs.

CALLISTER, Chief Justice (concurring):

I concur in result for reasons set forth in the main opinion in Hobbs v. Fenton, 25 Utah 2d 206, 479 P.2d 472 (1971).

HENRIOD, J., concurs in result.

ELLETT, J., does not participate herein.