367 P.2d 177

John G. BRAEGGER, Carl A. Braegger, Ada
Braegger Hansen, David W. Braegger and
O. Dee Lund, Plaintiffs and Respondents,

v.

Emma Braegger LOVELAND, Defendant
and Appellant.

No. 9452.

Supreme Court of Utah.

Dec. 1, 1961.

Huggins & Huggins, Ogden, for appellant.

Arthur Woolley, Ogden, for respondents.

CROCKETT, Justice.

Plaintiff O. D. Lund as administrator of the estate of William Braegger claims $45,000 which was held in a joint savings account with the defendant, Emma Braegger Loveland, decedent's sister, who also asserts ownership of the fund. After a trial the court awarded one-half to each, from which judgment defendant appeals.

William Braegger was a bachelor. By the time of his death on October 6, 1959, at the age of 70, he had accumulated a considerable estate including the bank account in controversy. He had been suffering from cancer and about two months prior to his death had transferred his savings account to a joint account with Emma. The bank account card was in the usual form, containing the recital that the parties were joint tenants with right of survivorship, and that either could withdraw the money. A month before her brother's death Emma withdrew the money and deposited it in an account in her own name. This act is practically the only fact which the plaintiff administrator can point to in support of his claim that although Emma could withdraw the funds, she must nevertheless account to the estate for them. In doing so he relies heavily upon the case of First Security Bank of Utah, N. A. v. Demiris.[1]

It is true that the sequence of events in the two cases is quite parallel. Yet the evidence here as to the intent in changing the account is significantly different. It should be stated that the Demiris case does not stand for the proposition urged that any withdrawal by one joint owner prior to the death of the other is per se wrongful and that such act automatically destroys the joint tenancy. But it is a circumstance which may be considered in determining what the intent of the parties was in creating the account and their relationship to it. It must be recognized that the right of either joint depositor to make withdrawals is one of the advantages of joint bank accounts. This is specifically granted by the agreement on the card signed by the parties at the time the account is created and it is to be expected that they will both have access to it. Therefore, the withdrawal by one of the joint tenants in and of itself merely shows that the existing right has been exercised, not necessarily that it has been abused.

In any contest over the ownership of funds in such an account the objective is to determine where the true ownership is, and this in turn often depends upon what the intent was in creating the account. The withdrawal in the Demiris case and the

1. 10 Utah 2d 405, 354 P.2d 97, 100.

attendant circumstances were deemed to have a bearing on that issue as is shown by this language: "The evidence points unerringly to the fact that insofar as the purpose, desire, and intent of the decedent was concerned, the transfer * * * was for his convenience in the face of the exigency that he had to go to the hospital. Except for the bare fact that a joint tenancy account was opened there is no circumstance * * which suggests any intent on his part to make gift or a transfer of ownership of this fund to his wife. On the contrary, their marital history and attitudes, as disclosed by the record, would negative any such intent. Her [Mrs. Demiris'] own testimony to the effect that his purpose in putting the account in her name was because he was going to the hospital, coupled with her subsequent conduct of grasping the fund practically as soon as she could get her hands on it argue persuasively that he had no intent to endow her with the money, and that she fully realized that fact."

▇▇▇ As we see the record in this case it points conclusively the other way: that there was an intent to make a gift. In making such appraisal, it should be kept in mind initially, that the burden was not upon the defendant to make an affirmative showing of such intent. As the survivor she was presumed to be the owner and the burden of attacking her ownership was upon the plaintiff administrator. This court has adopted the rule that where such a bank account card recites an agreement of joint ownership with right of survivorship, there is a presumption that it is valid and represents the true intent of the parties, which "will be given effect unless it is attacked for fraud, mistake, incapacity, or other infirmity, or unless it is shown by clear and convincing evidence that the parties intended otherwise." [2] And we see no reason why the intent of the parties with respect to the account, or their relationship to it, should be altered by the fact that one of the parties had died before the controversy arose.[3]

No charge is made here of any fraud, mistake, incapacity, undue influence or anything of that character. Thus the only possible avenue of attack open to plaintiff would be to show by clear and convincing evidence that the decedent did not intend to endow Emma with joint ownership and right of survivorship in the account. Such a proposition is untenable here. The fact that the decedent intended his sister to have the fund is supported not only by the presumption above stated, but is also borne out by the evidence. Its fair import is that there existed between the decedent William and his sister Emma a normal, wholesome, brother-sister relationship with each having

2. Neill v. Royce, 101 Utah 181, 120 P.2d 327; Greener v. Greener, 116 Utah 571, 212 P.2d 194.

3. Tangren, etc. v. Ingalls, Utah, 367 P.2d 179, see statement to that effect in Greener v. Greener, supra.

affection and concern for the other; that over many years she had extended care and help to her brother in many ways, such as putting up fruit, cooking meals and cleaning his house, particularly during his last illness. He had expressed to another sister, Lydia Braegger Hastings, and to a nephew, defendant's son Larry Loveland, that he desired to "do something for" Emma and that he was going to turn over the bank account to her at about the time he in fact caused it to be changed.

Notwithstanding the fact that the trial court may have considered dividing the fund between the estate, representing the rest of the family, and the defendant, to be a fair and equitable thing to do, we are unable to see any proper foundation upon which to predicate such a division of the money. The evidence is devoid of any indication that a partial gift was made or intended. Accordingly, in view of the presumption hereinabove discussed in favor of joint ownership with right of survivorship in the account, and the fact that there is not only no evidence which could be regarded as clear and convincing to overcome it, but that the evidence all seems to support such a conclusion, the judgment must be vacated and entered in favor of the defendant.

Costs to defendant (appellant).

WADE, C. J., and McDONOUGH, J., concur.

HENRIOD, Justice (dissenting).

I concur in the result but dissent from that portion of the main opinion that endorses the rule of Tangren v. Ingalls, and states that Neill v. Royce and Greener v. Greener laid down a rule to the effect that the contract is to be ignored if "it is shown by clear and convincing evidence that the parties intended otherwise." They laid down a rule that if one joint depositor is shown to have been inequitable because of fraud and the like, by clear and convincing evidence, the agreement could be vitiated in equity, as is the case, in equity, with any contract. What would the main opinion do with a case where "it is shown by clear and convincing evidence that the parties intended otherwise,"—which "otherwise" was to the effect that, equitable claims aside, the survivor intended the fund to belong to *him*, but the deceased intended that *he* should be its owner in toto. In such event, the main opinion would have to run to the written agreement for help, would invoke the parol evidence rule, and would get back to fundamentals.

CALLISTER, J., concurs in the views expressed in the opinion of HENRIOD, J.