404 P.2d 657

Bernice CULLEY, Executrix of the Estate of
Virgil J. Culley, deceased, Respondent,

v.

Douglas K. CULLEY, Claimant
and Appellant.

No. 10247.

Supreme Court of Utah.

July 27, 1965.

Roy F. Tygesen, Magna, for appellant.

Mark S. Miner, Salt Lake City, for respondent.

McDONOUGH, Justice.

Douglas K. Culley appeals from a judgment that a savings account of $1500 in the Garfield Smeltermen's Credit Union upon which he was shown as a joint signator belonged to the estate of his father, Virgil J. Culley.

On March 10, 1960, the father, Virgil, and the son, Douglas, signed the joint account card which provides for joint ownership with the right of survivorship. After the death of the father on October 10, 1963, Bernice Culley, executrix, on behalf of the estate, and the son, Douglas, both claimed ownership of the account. The Credit Union paid the money into court for disposition pursuant to Rule 67, U.R.C.P.

█ In support of his claim that he acquired ownership in this account, the son Douglas relies upon the recitals of joint ownership with right of survivorship contained on the card. It is to be kept in mind that if the transfer of ownership of this account, if any there was, was intended to vest only upon the father's death, that would be an attempted testamentary disposition which did not conform to the requisites for a will, and would therefore be invalid to transfer ownership as the trial court ruled. We recognize that from a recital of joint ownership with the right of survivorship there arises a presumption that such is the fact. But it is, of course, not absolute and invulnerable to attack. This is true even of deeds and other written instruments.[1]

█ In regard to accounts of this kind, it is appropriate to observe that there are some factors usually not present in regard to other written instruments. They are often used for some special purpose of the parties in connection with which their real intention is to obtain the convenience such an account affords, rather than to effect transfer of ownership in the funds. In addition to this, the deposit card is a printed form fashioned by the bank. It is signed by the parties at the bank's request and can be regarded as primarily for the bank's protection in allowing withdrawals by the signers. These are factors which may be given some consideration when an issue arises as to whether the card reflects the true ownership of the funds as between the sig-

---

1. See Northcrest v. Walker Bank & Trust, 122 Utah 268, 248 P.2d 692; also see Jardine v. Archibald, 3 Utah 2d 88, 279 P.2d 454; That a deed absolute in form is a mortgage if so intended by the parties see Thornley Land & Livestock Co. v. Gaily, 105 Utah 519, 143 P.2d 283 (1943); Gibbons v. Gibbons, 103 Utah 266, 135 P.2d 105 (1943). That the effect of a release may be overcome by clear and convincing evidence, see as to a release, Jimenez v. O'Brien, 117 Utah 82, 213 P.2d 337; also Kirchgestner v. Denver & R. G. W. R. R. Co., 118 Utah 41, 233 P.2d 699.

natories. We have heretofore quoted with approval the statement of Justice Cardozo in his concurring opinion in Moskowitz v. Marrow, 251 N.Y. 380, 167 N.E. 506, 66 A.L.R. 870.

"The plain implication is that as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more * * *."

and indicated our agreement with the presumption of ownership which arises from the recitals on the card; and that it should be given effect unless it is overcome by clear and convincing evidence.[2] The critical question confronted here is whether the trial court's finding that the parties did not intend the son Douglas to own any interest in the account prior to the father's death is supported by that degree of proof.

It was the father, Virgil Culley, who worked for the Garfield Smelter; established this savings account with the Credit Union; and made all of the deposits and the withdrawals therefrom. On the other hand, Douglas had never made any deposits or withdrawals; his name was never entered in the Credit Union's accounts, except on the card, and he makes no claim that any of his money ever went into the account. In regard to the asserted right of ownership based on the deposit card, he testified:

Q. Now this particular account which is subject to this action, did you make any deposits or withdrawals on this account?

A. I did not.

* * * * * *

Q. And you never intended to have any access to it at all?

A. No sir, I didn't, no sir.

* * * * * *

Q. And you never claimed any part of this account during his lifetime, did you?

A. Not while he was living.

* * * * * *

Q. Do you know from your conversation with him that you never intended and he never intended to give you any interest whatever in this money, did he?

A. I have already told you that in the event of his death I was supposed * *

Q. You never claimed any interest in the money which was in the bank at the time, did you?

A. No, I didn't.

■ On the basis of claimant's own testimony it seems incontestable that the trial court could reasonably find as it did,

2. See Tangren v. Ingalls, 12 Utah 2d 388, 367 P.2d 179 and authorities therein; also Braegger v. Loveland, 12 Utah 2d 384, 367 P.2d 177 (1961). See Sec. 7-13-39, U.C.A.1953 (Supp.1961) dealing with savings and loan companies.

that neither he nor his father intended that he should have any interest in this bank account while his father lived.[3] As in other matters of proof, whether the evidence is sufficient to meet the necessary requirements of being clear and convincing, is largely for the trial court to determine because of its advantaged position.[4] Under the traditional rules of review, which require us to survey the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the trial court's findings, we can see no basis for reversing the judgment.

Affirmed. Costs to respondent.

CROCKETT and WADE, JJ., concur.

HENRIOD, C. J., dissents.

CALLISTER, Justice (dissenting).

I dissent, adhering to my concurrence with the views expressed by Chief Justice Henriod's dissent in Tangren v. Ingalls[1] and Braegger v. Loveland.[2] Aside from its correct application of contract law and principles of equity, the case of Holt v.

Bayles [3a] (overruled by Tangren) enunciated a rule which produced consistency and promoted predictability.[4a]

---

3. In this particular different from Tangren v. Ingalls, supra note 2.
4. What constitutes clear and convincing evidence is largely for the trial court. See Child v. Child, 8 Utah 2d 261, 332 P. 2d 981.
1. 12 Utah 2d 388, 367 P.2d 179 (1961).
2. 12 Utah 2d 384, 367 P.2d 177 (1961).
3a. 85 Utah 364, 39 P.2d 715 (1934).

4a. 8 Utah L.R. 66. The Tangren rule has had just the opposite effect. See Braegger v. Loveland, supra; Haywood v. Gill, 16 Utah 2d 299, 400 P.2d 16 (1965); and the instant case. It is interesting to note that the Holt rule of conclusive presumption has been codified as to savings and loan institutions. 7–13–39, U.C.A.1953 (Supp.1961).