Anna H. URBAN and Winnie Woodard, Plaintiffs in Error,

v.

Myra Jane JACKSON, Defendant in Error.

No. 41023.

Supreme Court of Oklahoma.

Nov. 14, 1967.

Roper & Roper, by John Dee Roper, Oklahoma City, for plaintiffs in error.

V. P. Crowe and Andrew M. Coats, of Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for defendant in error.

PER CURIAM:

Parties occupy the same position here as in the trial court and will be so referred to here.

Mrs. Dollie Park was a widow who lived in Oklahoma City, Oklahoma, with her daughter, Myra Jane Jackson, now Swatek. She had three other daughters, Anna H.

Urban and Winnie Woodard, the plaintiffs here, Cora Hazel Kuhn and one son, Orval D. Park. Mrs. Dollie Park died on November 1, 1961. Her husband died sixteen years previously. She lived with the defendant nine months out of the year for the last ten years preceding her death. At the time of her death, Dollie Park owned a farm and some town lots in Rush Springs, Oklahoma. She also had two joint savings accounts and a joint checking account with the defendant in the bank at Rush Springs, which provided that the entire account or any part thereof may be withdrawn by, or upon the order of, either of the signers or the survivor. The defendant closed the accounts and put the proceeds amounting to $7,268.99, in a special savings account in her individual name.

The question to be determined here is whether the defendant should retain the $7,268.99 which was money that came to her through the joint accounts or should the proceeds thereof become a part of her mother's estate.

The plaintiffs have raised two propositions for reversal. The first is that the court erred in finding there was a completed gift from decedent Dollie Park to defendant under the evidence of the defendant.

The second proposition is that the court erred in admitting evidence on the part of the defendant.

We must disagree with the plaintiffs on their first contention.

Under the provisions of the cards setting up the joint accounts there is no question but that the defendant had the right to withdraw the funds from these separate accounts. In addition, she testified that her mother directed her to put up all the funds in the joint tenancy accounts into the special account. The signature cards were as follows:

"SAVINGS                    5–2–61
JOINT ACCOUNT—PAYABLE TO EITHER OR SURVIVOR
"We agree and declare that all funds, now or hereafter, deposited in this account are, and shall be, our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or any part thereof may be withdawn by, or upon the order of, either of us or the survivor.

"It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

/s/   Dollie Park
/s/   Myra Jackson"

We can see no way in which the mother intended to set up a trust for her children. Clearly, this one daughter, the defendant, had done the most for her down through the years and if there was any cash in her estate she wished that daughter to have it.

There was a fiduciary relationship existing between the defendant and her mother, but there is no evidence of mistake, overreaching, fraud or any other form of deception by the defendant.

■ There is no question but joint tenancy was created when Dollie Park put her money into joint bank accounts to be held by her and defendant under the terms of the signature cards. This is sustained by our opinions in Hadwiger v. Melkus, Okl., 365 P.2d 726, and Barton v. Hooker, Okl., 283 P.2d 514. The Supreme Court of Utah in a very similar case, Braegger v. Loveland, 12 Utah 2d 384, 367 P.2d 177, has reached the same conclusion as the trial judge did in this case. See also Matthew v. Moncrief, 77 U.S.App.D.C. 221, 135 F.2d 645, 149 A.L.R. 856.

Plaintiffs cite and rely on the case of Jonte v. English, 171 Okl. 291, 40 P.2d 646. The cited case is distinguished from the facts in the present case for the reason, as pointed out in the case of Hadwiger v. Melkus, supra, there was no joint account

agreement entered into. The cited case is therefore not applicable.

The testimony in this case revealed that defendant and her mother had discussed the significance of joint bank accounts and the effect of the right given signers of joint deposit cards to withdraw. The plaintiffs had attempted to get their mother to put the joint accounts in their names, and this she declined to do. The mother had delivered the pass books to defendant. After discussing this matter with the defendant, it was decided that in order to keep the plaintiffs from continually prevailing on their mother to make them joint tenants in these bank accounts that it would be better for the defendant to withdraw the funds and deposit them in the defendant's name. It seems to us that this is sufficient to make that special account the property of the defendant. We apparently have not decided a case on this point, but the Supreme Court of Utah in the case of Braegger v. Loveland, supra, had before it a similar case, and it held that where a brother two months before his death transferred his savings to the joint account with his sister, and that sister one month prior to her brother's death withdrew the savings and deposited them in her own name was insufficient to overcome presumption that decedent intended to endow his sister with joint ownership with right of survivorship in the account. In our case there was sufficient evidence that the mother intended the defendant should have any moneys of hers that might be left at her death.

There was no evidence that the defendant ever used the money belonging to her mother for anything other than the support and maintenance of her mother and the home in which her mother lived with her.

There is no question but that the mother was aware of the fact that defendant had withdrawn the money from the joint bank accounts and deposited the same in the defendant's own name, and it had her apparent approval. We cannot see where it can be said that this deposit was a trust fund for the mother.

As to the plaintiffs' second proposition we can see no merit therein. Their contention is that the trial court erred in admitting evidence on the part of the defendant that did not conform to defendant's pleadings. The defendant in her answer alleges that the money in question became hers by virtue of the provisions of the cards setting up the joint bank accounts. She was given full authority to withdraw the funds when she saw fit. Her mother was aware of the withdrawal of the funds and the establishment of the separate bank account in defendant's name. Defendant specifically denied in her answer that any trust had been created for her mother or any one else.

It was quite proper for the defendant to show the complete picture of her transactions, aid and assistance, and, in fact, everything that she did for her mother in order that a true picture would be presented to the trial court. This court has always been liberal in the admission of evidence in a case tried without a jury. In the early case of Gernert v. Griffin, 28 Okl. 733, 116 P. 439, we said:

"But, assuming that incompetent evidence was thus admitted, we will not, where, as here, a cause is tried to the court, reverse on that account, unless it it apparent from the record that the competent evidence was insufficient to support the decree, or in some other way show affirmatively that the improper evidence affected the result. McCready v. Crane, 74 Kan. 710, 88 P. 748; Miller et al. v. Foster, 28 Okl. 731, 116 P. 438. This for the reason that it will be presumed, unless the contrary appears from the record, that the court in reaching its conclusions considered only such evidence as was legally admissible. * * *"

The judgment of the trial court is not against the clear weight of the evidence. We find no reversible error.

Judgment affirmed.

All the Justices concur.

The court acknowledges the aid of Supernumerary Judge HARRY L. S. HALLEY

in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this court. Thereafter, upon report and consideration in Conference, the foregoing opinion was adopted by the court.