Ara OTTESON and Nellie A. Otteson, Plaintiffs and Respondents,

v.

Richard D. MALONE and Hila Sue Malone, Defendants and Appellants.

No. 15478.

Supreme Court of Utah.

Sept. 13, 1978.

Duane A. Frandsen and Michael R. Jensen of Frandsen, Keller & Jensen, Price, for defendants and appellants.

Donn E. Cassity and J. Steven Newton of Romney, Nelson & Cassity, Salt Lake City, for plaintiffs and respondents.

MAUGHAN, Justice:

The plaintiffs commenced these proceedings seeking rescission of an option contained in a lease. The defendants counterclaimed for specific performance of the option. Defendant's appeal from a decision of the court declaring the option invalid. We reverse and remand with instructions to order specific performance for defendants, pursuant to the terms of the contract. No costs awarded.

Prior to June 27, 1974, the defendants had purchased from the plaintiffs 10 acres of land without water rights. On June 27, 1974, the plaintiffs and defendants entered into a lease of 28 acres of land which could be irrigated and which had a water right. After negotiations were carried on among the parties, an attorney was employed to draft the necessary instrument. The instrument entitled "Lease and Option" contained the following provision:

> That the Lessees are hereby given the option to purchase the property being Leased hereunder, upon giving thirty (30) days' prior written notice before the expiration of this Lease, of their intention to exercise the option and the purchase price to be paid by the Lessees to the Lessors for the purchase of this property shall be determined by two (2) competent appraisers, one to be chosen by the Lessors and one to be chosen by the Lessees, so that a fair market value for the property can be determined, in the event that the right to purchase is exercised by the Lessees. All Lease payments shall apply toward the established purchase price.

At the time of the consultation with the attorney, Mrs. Nellie A. Otteson was too ill to attend. Ara Otteson was unable to hear what went on due to the fact that the battery in his hearing aid had gone dead. A draft of the proposed instrument was written and sent to the Ottesons and Malones by the attorney. After suggested changes were made, the instrument was sent to the parties in final form and it was thereafter signed by all parties.

Ara Otteson testified that prior to the execution of the lease and option he and the Malones had a number of conversations about leasing the 28 acres. During those conversations no mention was made of an option to purchase and at the attorney's office he was unable to hear and could not take part in what was said. Mr. Otteson also stated that after he had received the final draft of the instrument, he did not understand it; but at no time did he intend to grant an option to buy the 28 acres. Otteson was of the opinion the provision of the lease pertaining to the option had the effect of granting to the Malones the right of first refusal in the event it was later decided to sell the 28 acres.

The court was of the opinion that, by reason of the circumstances of the negotiation and execution of the option, plaintiffs misunderstood the significance of the effect of the option provision and declined to grant specific performance on the defendants' counterclaim. The lease portion of the instrument was ordered to remain in force and effect.

Here defendants are seeking a reversal and as a basis claim the instrument containing the option is a simple contract without complex language, which should be easily understood by persons of average intelligence. Defendants contend the trial court erred in admitting parol evidence surrounding the execution of the instrument, and in failing to enforce the option pursuant to its terms.

In determining a grant of specific performance a court should examine the contract and the circumstances pertaining to its execution and formation, and determine whether there exist equitable grounds

to grant or deny specific performance. In this connection a court may consider any evidence of concealment, overreaching, or misunderstanding on the part of the contracting parties which might result in a failure of meeting of the minds.[1]

There is no evidence of fraud, misrepresentation, or overreaching on the part of defendants, and the plaintiffs are bound by the contract they engaged. The language of the lease and option was plain and unambiguous. The parties had reduced an agreement to writing after negotiations, and after careful thought had been given to its formation and drafting.

■ A written contract duly entered into should be regarded with some sanctity; and its commitments can only be overcome by clear and convincing evidence.[2] In view of the situation here, where there were prior negotiations, the furnishing of the preliminary copy, as well as an amended one, with ample opportunity to read, (the defective hearing of Mr. Otteson thus becoming unpersuasive) coupled with the later signing, and other circumstances shown, I cannot see wherein a fair and reasonable conclusion could be drawn that the Ottesons proved by clear and convincing evidence that they had not understood and agreed to the contract as they signed it.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

---

1. Corbin on Contracts, Section 1136; *Pope Manufacturing Co. v. Gormudy*, 144 U.S. 224, 12 S.Ct. 632, 36 L.Ed. 414.

2. See *Greener v. Greener*, 116 Utah 571, 212 P.2d 194; *Jardine v. Archibald*, 3 Utah 2d 88, 279 P.2d 454.